IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                      PLAINTIFF

vs.                              NO. 4:08CR00213 BSM

GEFFREY ALAN YIELDING                                         DEFENDANT

## ORDER

On February 4, 2009, the grand jury for the Eastern District of Arkansas returned a

second superceding indictment charging defendant Geffrey Alan Yielding (Yielding) with

violating the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b)(2)(B) and falsifying

documents in violation of 18 U.S.C. §§ 1519 and 2.   Yielding has filed a motion to declare

the proffer agreement unenforceable or, in the alternative, to strike portions of the proffer

agreement; and to suppress statements unlawfully obtained [Doc. No. 41].  The government

has responded.

## I.  BACKGROUND

The indictment in this case arises from an investigation into a kickback scheme

involving the purchase of medical supplies. Yielding is charged with aiding and abetting his

late wife, Kelly Yielding, in paying illegal kickbacks to Jody Wall (Wall), a nurse at Baptist

Health Medical Center in North Little Rock (Baptist NLR), from around June, 2003 through

December, 2004.  Yielding was employed as a surgical assistant for Dr. Richard Jordan, who

performed surgeries at Baptist NLR. One of Yielding's responsibilities was to ensure that Dr.

Jordan had the supplies he needed in the operating room, and as such had frequent contact

with Wall, a charge nurse who was responsible for inventory.   Kelly Yielding was a distributor for several medical device companies, including Osteotech and Orthofix.  Two of the products that Kelly distributed and for which she received commissions were pieces of bone from Osteotech and bone growth stimulators from Orthofix.   Yielding is charged with providing Wall with checks from Kelley Yielding's distributorship, Advanced Neurophysiology, Inc. (ANI), to induce Wall to order and purchase the products sold by ANI.

Baptist NLR fired Wall in November, 2004, in part due to his alleged improper ordering procedures and mismanagement of the bone inventory. The Yieldings and Wall are alleged to have then created a false transaction in order to make the checks paid to Wall by ANI in 2004 appear as loans to Wall.

Yielding challenges two different statements he made to law enforcement officials.

## II.  DISCUSSION

A.  <u>April 14, 2006 Statement</u>

On April 14, 2006,in the course of executing a search warrant at Dr. Jordan's medical office, federal agents questioned Yielding.  Yielding argues that he was not advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) during the questioning.   It appears, according to the government's response, that Yielding made incriminating statements regarding his relationship with Wall during the interview.

*Miranda* warnings are only required where a person's freedom "has been so restricted as to render him 'in custody'" *Untied States v. Cartier*, 543 F.3d 442, 448 (8th Cir. 2008)

(citation omitted). "The 'only relevant inquiry' in considering that question is how a reasonable person in [Yielding's] position would have understood his situation." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004).

Yielding has not provided any facts in support of his argument that his statement should be suppressed. The government contends that Yielding voluntarily agreed to be interviewed. It asserts that during the interview, which was conducted by two agents, Yielding was free to leave at any time. The government states that Yielding even got up from the interview table at one point during the interview to answer an incoming call on his cell phone. The interview lasted 1.5 hours and at the conclusion of the interview, according to the government, Yielding gave the agents his cell phone number in the event the case agent had any follow-up questions. Yielding has not disputed the government's characterization of the interview.

Yielding requests a hearing on his motion to suppress. Yielding, however, must do more than merely allege that at the time of the interrogation he believed that he was a target of the federal investigation for the court to grant Yielding's request. "When a motion to suppress is filed, evidentiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the [statement] are in question, an evidentiary hearing is required. A hearing is also unnecessary if it can be determined that suppression is improper as a matter of law." *United States v. Mims*, 812 F.2d 1068, 1073-74

(8th Cir. 1987) (citations and internal quotation marks omitted).  *See United States v. Starks*, 193 F.R.D. 624, 626 (D. Minn. 2000) (motions to suppress must clearly specify statements sought to be suppressed, articulate grounds for suppression, and substantiate why an evidentiary hearing is required).

Here, Yielding has merely asserted that he believed that he was a target of the federal investigation at the time he was interrogated.  That Yielding was a target of a federal grand jury investigation is irrelevant to the *Miranda* custody inquiry.  *Stansbury v. California*, 511 U.S. 318, 324 (1994).

Yielding has presented no basis for the court to hold an evidentiary hearing on his request to suppress the April 14, 2006 statement.  Furthermore, Yielding has not presented any evidence to support a finding that he was in custody at the time of the interview.  Thus, Yielding's request to suppress the April 14, 2006 statement is denied.

B.  November 16, 2006 Proffer Agreement

On November 16, 2006, Yielding along with his counsel at that time, Jeff Rosenzweig, met with the United States Attorney Karen Whatley, and executed a document entitled "Geff Yielding Proffer Agreement."  The government states that the proffer was in response to an indictment against Dr. Patrick Chan, a neurosurgeon who practiced in Searcy, Arkansas, charging him with violating the anti-kickback statute for accepting a portion of a distributor's commission.  After executing the proffer agreement, Yielding made statements to law enforcement officials regarding his arrangement with Chan.

-4-

Yielding argues that certain provisions in the proffer agreement are violative of his

Sixth Amendment rights.  The two provisions at issue provide:

> 7.  Impeachment: If you should testify materially contrary to the substance of the proffer, or otherwise present in a legal proceeding a position materially inconsistent with the proffer, the proffer may be used against you as impeachment or rebuttal evidence, or as the basis for a prosecution for perjury or false statement.

> 8.  Derivative Use: The government may make derivative use of, and may pursue investigative leads suggested by, any statements or information provided by you [sic[ proffer.  This provision is necessary to eliminate the necessity of a Kastigar hearing wherein the government would have had to prove that the evidence it sought to introduce at trial or in a related legal proceeding is derived from "a legitimate source wholly independent" of statement or information from the proffer.

Yielding argues that the proffer statements cannot be used against him as he did not

knowingly and voluntarily waive his rights under Rule 410 of the Federal Rules of Evidence

and Rule 11(f) of the Federal Rules of Criminal Procedure.  Rule 410 and Fed. R. Crim. P.

11(f) provide that statements made in the course of plea discussions are inadmissable against

a defendant.  The government counters that Yielding's waiver of rights is valid and that it

intends to use the proffer, only as permitted by the terms of the agreement, if Yielding "should

testify materially contrary to the substance of the proffer, or otherwise present in a legal

proceeding a position materially inconsistent with the proffer."

The Supreme Court, in *United States v. Mezzanatto*, 513 U.S. 196 (1995), held that

agreements between the United States and a defendant in which the defendant waives his

rights under F.R.E. 410 are valid and enforceable if entered into knowingly and voluntarily.

Moreover, a number of courts have held similar waiver provisions valid and enforceable. *See United States v. Bloate*, 534 F.3d 893, 902 (8th Cir. 2008) (finding no error in admitting statements defendant made during proffer session); *United States v. Velez*, 354 F.3d 190, 195 (2d Cir. 2004) (waiver provision in proffer agreement constitutional);*United States v. Williams*, 295 F.3d 817, 819-820 (valid waiver of rights and government could cross-examination defendant concerning his proffer statement and plea stipulation). A waiver provision, however, can be deemed unenforceable if the court finds "some affirmative indication that the agreement was entered into unknowingly or involuntarily." *Mezzanatto*, 513 U.S. at 210. "A waiver is made knowingly if the defendant has 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it,' and it is voluntary if it is 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Velez*, 354 F.2d at 196 (quoting *Moran v. Burbine*, 475 U.S. 412, 421(1986)).

Yielding has presented no evidence supporting his contention that he did not knowingly and voluntarily waive his rights. Yielding was represented by experienced legal counsel during the negotiations, who reviewed the agreement with him. Yielding signed the proffer agreement, stating that he had read it carefully and reviewed every part with his attorney. He further stated that he understood and voluntarily agreed to it. His lawyer also signed the agreement and stated that the decision to make the proffer agreement was informed and voluntarily.

The court finds that the waiver provision in the proffer agreement is enforceable and that the government may use the proffer pursuant to the terms of the proffer agreement.

### III.  CONCLUSION

Accordingly, the motion to declare the proffer agreement unenforceable or, in the alternative, to strike portions of defendant's proffer agreement; and to suppress statements unlawfully obtained [Doc. No. 41] is denied.

.      IT IS SO ORDERED this 25th day of March, 2009.

_____
UNITED STATES DISTRICT JUDGE